UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-00038-MR

| | |
|---|---|
| FAITH SHERRIE STREETER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>MARSHALL WILLIAMS, )<br>)<br>Defendant. )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss [Doc. 37].

I.  **BACKGROUND**

Pro se Plaintiff Faith Sherrie Streeter ("Plaintiff") filed this action on January 23, 2023, pursuant to 42 U.S.C. § 1983 against Defendant Marshall Williams based on events she alleged occurred while she was incarcerated at Anson Correctional Institution in Polkton, North Carolina. [Doc. 1]. Plaintiff's Eighth Amendment excessive force claim survived initial review and Plaintiff's remaining claims were dismissed. [Doc. 10]. In her unverified Complaint, Plaintiff alleged, in pertinent part, as follows. On November 8, 2022, at approximately 3:00 p.m., Defendant Williams, along with three other officers, was escorting Plaintiff to mental health observation. Plaintiff was in

full restraints, including leg shackles. Upon entering the receiving area, Plaintiff kicked a trash can, and Defendant Williams instructed staff to take Plaintiff to the ground. Defendant Williams shoved Plaintiff's arms, which were restrained behind her back, up toward her head. Defendant Marshall "kept pulling [Plaintiff's] arms causing [her] extreme pain." Plaintiff was then put on her feet and instructed to enter a cell. After Plaintiff was in the cell, Defendant Williams entered the cell and pushed Plaintiff forcefully from behind. Defendant Williams then "proceeded to get into [Plaintiff's] face, brushing up against [her] chest and threatening [her]." [Id. at 6-7].

In her Complaint, Plaintiff alleged that she had filed a grievance regarding the alleged incident and admitted that it was "still in process" when she filed her Complaint. [Id. at 10]. Plaintiff included a copy of the grievance, which is dated January 2, 2023, with her Complaint. [Id. at 12]. In the grievance, Plaintiff complained only about Defendant Williams' alleged use of force inside the cell. [See id.]. In response to the question on the grievance form, "What remedy would resolve your grievance?", Plaintiff wrote "[n]o remedy needed whereas I am pursuing this matter further." [Id.].

On August 14, 2023, the Court entered a Pretrial Order and Case Management Plan (PTOCMP) setting the discovery deadline as December

8, 2023, and the dispositive motions deadline as January 8, 2024.[1] [Doc. 22]. On September 6, 2023, Plaintiff notified the Court that she had recently been transferred to the North Carolina Correctional Institution for Women (NCCIW) in Raleigh, North Carolina, which remains her address of record now. [Doc. 24]. The unextended discovery completion deadline expired on December 8, 2023.

On April 22, 2024, mail the Clerk had sent to Plaintiff at the NCCIW was returned undeliverable; the envelope was marked "Inmate Released." [See Doc. 31]. The Clerk, therefore, entered a Text-Only Notice instructing the Plaintiff that she must notify the Clerk of any changes to her address within 14 days of the Notice and that the failure to do so may result in the dismissal of this action. [4/24/2024 Text-Only Notice]. The Clerk sent a copy of the Text-Only Notice and a Notice of Change of Address Form to the Plaintiff at the NCCIW the same day. [Id.]. On May 8, 2024, these documents were returned to the Clerk as undeliverable.[2] [Doc. 35].

On May 9, 2024, Defendant moved to dismiss Plaintiff's Complaint for failing to prosecute this matter and for failing to exhaust administrative

---

[1] The current dispositive motions deadline in this matter is July 3, 2024. [4/29/2024 Text Order].

[2] Two other Text-Orders – both extending the dispositive motions deadline – have also been returned undelivered since the Court's Text-Only Notice. [Docs. 34, 36].

remedies pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), before filing this action.[3,4]  [Doc. 37].

On May 17, 2024, Plaintiff responded to Defendant's motion to dismiss. [Doc. 39].  In this unverified response, Plaintiff claims that she "has made the court aware of current address by written letter to the clerk of court."[5]  [Id. at 2].  Plaintiff claims that Defendant has failed to respond to interrogatories, requests for admissions, or requests for production of documents Plaintiff mailed in October 2023.  [Id. at 1].  Plaintiff also contends that she "filed a grievance on December 12[,] 2022," that "[n]o response was given to the grievance," that she "wrote Amanda Henry to follow up with the grievance and was advised that [it] was sent to NCCIW for response," and that she submitted the grievance "receipt" with her Complaint.  [Id.].  Finally, Plaintiff claims, without further elaboration, that "Defendant has failed to comply with court orders, and administrative remedy requirements."  [Id. at 2].

The matter is now ripe for adjudication.

---

[3] Because it would have inevitably been returned as undelivered, the Court did not enter a Roseboro Order advising Plaintiff of her obligations in responding to this motion.

[4] After learning Plaintiff's current address on inquiry to the North Carolina Department of Adult Corrections (NCDAC), Defendant Williams served his motion to dismiss on Plaintiff at the Wake County Detention Center in Raleigh, North Carolina.  [See Doc. 37-6 at 1; Doc. 37 at 3; Doc. 39-1].

[5] The Court has received no such letter from the Plaintiff.

## II. DISCUSSION

The PLRA requires a prisoner to exhaust his/her administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. 534 U.S. 516, 532 (2002). The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice. Id.

In Woodford v. Ngo, the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that

5

Case 3:23-cv-00038-MR   Document 40   Filed 05/28/24   Page 5 of 10

unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). Because exhaustion of administrative remedies is an affirmative defense, Defendants have the burden of pleading and proving lack of exhaustion. Id. at 216.

Finally, it is well-settled that a prisoner may not exhaust her administrative remedies during the pendency of a Section 1983 action; rather, she must fully exhaust all steps of the administrative process before filing her lawsuit. See Germain v. Shearin, 653 Fed. Appx. 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011). The North Carolina Department of Public Safety (NCDPS) has established, in its Administrative Remedies Procedures ("ARP"), a three-step procedure governing submission and review of inmate grievances.[6] Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008). Inmates are required to exhaust administrative remedies with the NCDPS in accordance with ARP. Id. An inmate does not exhaust his administrative remedies with the NCDPS until she completes all three steps. Id.

---

[6] On January 1, 2023, the NCDAC replaced the arm of the NCDPS concerned with adult corrections. In this matter the 2013 NCDPS ARP – and not the 2023 NCDAC ARP – was in effect at the time of the alleged incident and at the time of any alleged grievance [see Doc. 37-5 at 1]. Therefore, the Court will herein reference the responding administrative entity as the NCDPS.

Here, Plaintiff included with her Complaint a copy of a grievance she submitted on January 2, 2023, regarding the alleged incident. On the grievance, Plaintiff wrote that she needed "[n]o remedy" because she was "pursuing this matter further," presumably by way of the instant action. [See Doc. 1 at 12]. Plaintiff now contends in her unverified response to Defendant's motion to dismiss that she filed a grievance on December 12, 2022; that she received no response to it; and that, on further inquiry, she was told the grievance was sent to NCCIW for response. [Doc. 39 at 1].

In support of his motion to dismiss, Defendant provided copies of Plaintiff's three fully exhausted grievances from May 2022 to January 2023, as provided by the Inmate Grievance Resolution Board ("IGRB") through Executive Director Kimberly Grande. [Doc. 37-4]. See Yarber v. Capital Bank, 944 F.Supp.2d 437, 441 (E.D.N.C. Mar. 18, 2013) ("The court may also consider documents attached to the complaint and documents attached to the motion to dismiss if those documents are integral to the complaint and authentic."). See also Doc. 37-2 at ¶ 4: Aff. of Counsel; Doc. 37-4: Grande Memo.]. Grande provides that these grievances were the only ones submitted by Plaintiff during the relevant time and exhausted through Step Three of the grievance process. [Doc. 37-4 at 1]. Two of these grievances regarded Plaintiff's lost identification and food stamp cards and the third

7

involved an alleged use of force incident in December 2021. [See Doc. 37-4 at 2-23]. None of these grievances relate to the events giving rise to this cause of action. [See id.]. Further, the record clearly evidences Plaintiff's access to and adeptness at navigating the grievance process. Finally, as noted, Plaintiff presented no grievance records or any statements under penalty of perjury in response to Defendant's showing on exhaustion.

Exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725. Plaintiff, however, must show that administrative remedies were not available. Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011); Stohl v. Eastern Reg'l Jail, No. 1:14-cv-109, 2015 WL 5304135, at *7 (N.D.W. Va. Sep. 8, 2015) (granting defendants' motion to dismiss and refusing to credit conclusory allegation that grievances were discarded where such allegation "not only is unsupported by any of the evidence in the record, but is belied" by documentary evidence showing plaintiff successfully filed other grievances during the same time period).

Defendant here has shown that Plaintiff did not exhaust her administrative remedies relative to the facts giving rise to this cause of action before she filed her Complaint. That is, while Defendant acknowledges that Plaintiff filed a grievance on January 2, 2023 regarding the alleged incident,

he points out that Plaintiff did not appeal this grievance through Step Three. [Doc. 38 at 7]. Plaintiff admitted that the grievance was "still in process" when she filed her Complaint and only now contends, in her unverified response to Defendant's motion to dismiss, that she attempted to follow up on the grievance and "still [received] no response." As such, Plaintiff has not shown that administrative remedies were not available to her thereby excusing the exhaustion requirement. As such, this action must be dismissed without prejudice. See Harris v. Midford, No. 1:10-cv-263, 2011 WL 1601446 (W.D.N.C. Apr. 27, 2011). The Court will, therefore, grant Defendant's motion to dismiss.

Even if Plaintiff had exhausted her administrative remedies before filing this action, the Court would dismiss this action without prejudice for Plaintiff's failure to prosecute. That is, the deadline to notify the Court of her new address has passed, and Plaintiff has not done so.[7]

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss [Doc. 37] is **GRANTED** and this action is **DISMISSED without prejudice**.

---

[7] The Court also notes that, in an apparent attempt to save her Complaint from dismissal, Plaintiff claims that Defendant failed to respond to her discovery requests and "to comply with court orders, and administrative remedy requirements." [Doc. 39]. Plaintiff cites nothing in support of these plainly baseless claims. To be sure, Plaintiff filed no motions to compel discovery responses from Defendant and there is no failure to comply with any Court Order by Defendant evident from the record.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: May 27, 2024

Martin Reidinger
Chief United States District Judge